Michael E. Schwimer, Esq. (SBN 255567)
**SCHWIMER WEINSTEIN LLP**
2665 Main Street, Suite 200
Santa Monica, CA 90405
Telephone: (310) 957-2700
Email: service@swlawllp.com

Mitchell E. Rosensweig, Esq. (SBN 320480)
**LAW OFFICES OF MITCHELL ROSENSWEIG**
12100 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
Telephone: (310) 800-2717
Email: Info@Lomr.Law

Attorneys for Plaintiff
ROBERT EARL DUSTIN and JULIE DUSTIN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT EARL DUSTIN, an individual; JULIE DUSTIN, an individual<br><br>Plaintiff,<br><br>v.<br><br>PRINCESS CRUISE LINES, INC.; PRINCESS CRUISE LINES, LTD.; PRINCESS CRUISE LINES, an entity form unknown; and DOES 1 through 50, inclusive;<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR PERSONAL INJURIES & JURY DEMAND:**<br><br>**(1) NEGLIGENCE**<br>**(2) BREACH OF CONTRACT**<br>**(3) LOSS OF CONSORTIUM** |

1
**COMPLAINT**

COME NOW, Plaintiffs ROBERT EARL DUSIN and JULIE DUSTIN ("Plaintiffs"), individuals, who, by and through their attorney(s) of record, for all causes of action as against Defendants PRINCESS CRUISE LINES, INC., PRINCESS CRUISE LINES, LTD., PRINCESS CRUISE LINES, and DOES 1 to 50, inclusive, complains as follows:

## GENERAL ALLEGATIONS

1. At all times relevant, Plaintiffs ROBERT EARL DUSTIN and JULIE DUSTIN are and were individuals residing in the State of Tennessee, County of Williamson.

2. At all times relevant, Defendant PRINCESS CRUISE LINES, LTD. is and was a business organization, form unknown, doing business within the State of California, including, but not limited to, the County of Los Angeles.

3. At all times relevant, Defendant PRINCESS CRUISE LINES, LTD. is and was incorporated in Bermuda, with its headquarters in Santa Clarita, California and doing business within the State of California, including, but not limited to, the County of Los Angeles.

4. At all times relevant, Defendant PRINCESS CRUISE LINES is and was a business organization, form unknown, doing business within the State of California, including, but not limited to, the County of Los Angeles.

5. Hereinafter, "Defendants" shall mean and refer to all defendants named in this Complaint.

6. The true names and capacities of defendants named herein as Does 1 to 50 inclusive are unknown to Plaintiffs, who therefore sue said defendants by fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs are informed and believe, and thereon allege, that each of said fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries and damages herein alleged were proximately caused thereby. Each reference in this Complaint to "Defendant," "Defendants," or a

specifically named Defendant, also refers to all defendants sued under fictitious names.

7. At all times hereinafter mentioned, Plaintiffs will show, according to proof, that Defendants were, and remain, the alter egos, successors, and/or successors in interest, of the remaining Defendants.

8. As to "alter ego liability" Defendants, it is alleged, upon information and belief, that as to those Defendants, that at all times there existed such a unity of interest and ownership among those Defendants such that any separateness ceased to exist that one was a mere shell or instrumentality through which the other carried out their business and that each Defendants exercised such complete control over the other and so dominated it to achieve individual goals and so ignored business formalities that any separateness was merely a fiction, and did not in fact exist, and should be deemed not to exist, and as such, if acts are alleged as against one Defendants in this complaint, it is alleged that that Defendant acted for itself as well as on behalf of its alter egos. Among other things, those Defendants did one or more of the following acts supporting its alter ego liability: (1) commingled corporate funds; (2) failed to observe corporate formalities including maintaining minutes and failure to contribute sufficient capital; (3) commingled funds or other assets; (4) used corporate funds for something other than corporate uses; (5) failed to maintain adequate corporate records; (6) deliberately confused the records of the separate entities; (7) had the same directors and officers of the two or more corporations; (8) used the same office or business location; (9) utilized the same employees and/or attorney; (10) failed to adequately capitalize the corporation; (11) used the corporation as a mere shell, instrumentality or conduit for a single venture; (12) failed to maintain an arm's length relationship among related entities; and/or (13) used a corporate entity to procure labor, services or merchandise for another entity. Moreover, injustice would result but for the finding of alter ego liability as to these Defendants, and as such this Court should pierce the corporate veil. Further, since alter ego applies here, a corporation's shareholders are treated as "partners" and are held jointly and severally liable for its debts and ownership of one share is sufficient to impose alter ego liability, and it is thus alleged, upon information

and belief, that various Defendants as alter egos, are also active shareholders in the remaining Defendants, influenced and governed the remaining corporate Defendants and as such can, and should, be held liable as an alter ego of each and every remaining Defendant.

9. At all times herein mentioned, each Defendant, including all Defendants sued under fictitious names, was the agent and employee of the remaining Defendants, and in doing the things hereinafter mentioned, each Defendant was acting within the course and scope of such agency and employment, with the knowledge, consent and permission of each other Defendant, and as authorized and/or ratified by each of the remaining Defendants.

10. Venue is proper in this Court as one or more Defendants reside within the jurisdictional limits of this Court and a contract containing a venue clause specifying this Court may apply.

## JURISDICTION AND VENUE

11. This is a case of Admiralty and Maritime Jurisdiction and is a claim within the meaning of F.R.C.P. 9(h). Admiralty and Maritime Jurisdiction is based upon 28 U.S.C. Section 1331 and 28 U.S.C. Section 1333. Supplemental jurisdiction for state-based claims is based upon 28 U.S.C. Section 1333 and 28 U.S.C. Section 1367(a). The location of the incident was navigable international waters and the incident occurred in connection with traditional maritime activity. Defendants owned, controlled, and/or were operating the ship Discovery Princess in navigable international waters at all times relevant hereto.

12. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. section 1391. Princess Cruise Lines, Ltd. is based in Los Angeles County, California. The incident occurred in international navigable waters.

## FACTUAL SUMMARY

13. On or about November 26, 2022, Plaintiffs ROBERT EARL DUSTIN and JULIE DUSTIN, husband and wife, boarded the "Discovery Princess," a Princess cruise ship, to take what he reasonably expected to be a dream vacation. On or about November

27, 2022, Plaintiff ROBERT EARL DUSTIN stepped out of the hot tub in the "Sanctuary" aboard the Discovery Princess onto a stairway that was wet and/or lacked slip resistance, causing ROBER EARL DUSTIN to slip and/or fall onto his right leg, on flooring that was wet and/or lacked slip resistance, resulting in serious injuries, including but not limited to, a quadriceps tendon rupture. The purpose of this lawsuit is to recover monetary damages from all parties responsible for causing Plaintiffs' injuries and damages.

### FIRST CAUSE OF ACTION

**(For Negligence by Plaintiff ROBERT EARL DUSTIN against all Defendants)**

14. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in Paragraphs 1 through 13 hereinabove, inclusive, as though set forth at length herein.

15. At all times relevant, Plaintiffs were business invitees of Defendants.

16. At all times relevant, Defendants were the owners, operators, lessors, lessees, managers, and controllers of the vessel named the "Discovery Princess" (hereinafter the "Cruise Ship") and were engaged in the business of common carrier of passengers for hire.

17. At all times relevant, Plaintiffs were lawfully on the Cruise Ship with the consent, invitation, permission, and knowledge of Defendants.

18. At all times relevant, Plaintiffs were aboard the Cruise Ship as paying passengers, acting with due cation, attention, and care.

19. At all times relevant herein, Defendants and DOES 1 through 50, inclusive and each of them, were, and are, engaged in the business of owning, operating, managing, maintaining, cleaning, controlling, equipping, supplying, inspecting, repairing, supervising and/or were otherwise responsible for the safety of the Cruise Ship, including but not limited to the "Sanctuary" as well as all affiliated, attached and related premises, structures, fixtures, and appliances, and any and all stairways and flooring, at all times alleged in this Complaint.

20. That at said time and place, Defendants were a common carrier, to whose paying passengers, including Plaintiffs, said Defendants owed the highest duty of care.

21. At said time and place, Defendants so negligently managed, supervised, maintained, and operated the Cruise Ship that a dangerous condition was created proximately causing the hereinafter described injuries and damages to Plaintiffs.

22. At said time and place, the dangerous condition included, but was not limited to, the unsafe stairway and flooring at the "Sanctuary" on the Cruise Ship.

23. At said time and place, Defendants had actual or constructive knowledge of the dangerous condition(s) and failed to alleviate said dangerous condition(s), so as to proximately and/or legally cause the hereinafter described injuries and damages to Plaintiffs.

24. At said time and place, Defendants so negligently managed, maintained, and operated the Cruise Ship such that Plaintiff ROBERT EARL DUSTIN was injured by, among other things, the unsafe stairway and/or flooring at the "Sanctuary" on the Cruise Ship, proximately causing him to sustain damages and injuries, including, but no expressly limited to, a quadriceps tendon rupture, pain and suffering, and emotional distress, all in amounts according to proof (the "INCIDENT").

25. At said time and place, Defendants had actual and/or constructive knowledge of the dangerous conditions and failed to warn Plaintiff ROBERT EARL DUSTIN of said dangerous conditions, so as to proximately cause the INCIDENT.

26. Further, the doctrine of *res ipsa loquitur* applies in this instance, as an event such as this INCIDENT does not ordinarily happen in the absence of negligence of the part of the parties herein identified as defendants.

27. Additionally, that Defendants rendered negligent medical and nursing service to Plaintiff ROBERT EARL DUSTIN, which proximately caused him to sustain, or exacerbated, the injuries and damages as described in the this complaint and according to proof. Specifically, the Defendants and each of them departed from good and accepted medical practice in the treatment of Plaintiff ROBERT EARL DUSTIN's injury(ies), thereby causing him to sustain damage and/or greater damage as a result.

28. As a direct and proximate result of the foregoing, Plaintiff ROBERT EARL

DUSTIN was seriously hurt and injured in his health, strength, and activity, sustaining shock and injuries to his body, person, and mental state, all of which said injuries have caused and continue to cause Plaintiff ROBERT EARL DUSTIN great mental, physical, pain and suffering, and severe emotional distress. The exact amount and extent of said injuries, in an amount in excess of the minimum jurisdictional limits of this court, is presently unascertained; when so ascertained, or at the time of trial, Plaintiffs will amend this Complaint accordingly.

29. As a further and direct and proximate result of the foregoing, Plaintiff ROBERT EARL DUSTIN was required to and did employ physicians and surgeons to examine, treat and care for said Plaintiff and did incur medical and incidental expenses, the exact amount of which are not known at this time. Plaintiffs will ask leave to amend this complaint at such time as the exact amount of this loss is ascertained or proven at time of trial.

30. As a further direct and proximate result of the foregoing, Plaintiff ROBERT EARL DUSTIN was prevented from attending to her usual occupation(s) for a period of time, sustaining loss of earnings in an amount unknown to said Plaintiffs at this time. Plaintiffs will ask leave to amend this complaint at such time as the exact amount of this loss is ascertained or proven at time of trial.

31. As a further direct and proximate result of the foregoing, Plaintiff ROBERT EARL DUSTIN was prevented from attending her usual activities and household responsibilities in an amount which will be shown according to proof.

## SECOND CAUSE OF ACTION

**(For Breach of Contract(s) by Plaintiffs against all Defendants)**

32. Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 31 hereinabove, inclusive, as though set forth at length herein.

33. Plaintiffs and Defendants entered into a singular or various oral/written/implied contract(s) for passage aboard the Cruise Ship,

34. Pursuant to the passage contract(s), Plaintiffs agreed to tender valuable consideration to Defendants. In exchange, Defendants agreed to provide Plaintiffs with various services, including but not limited to honest and truthful services of a travel agent, and food, safe lodging, and entertainment on the Cruise Ship.

35. Plaintiffs did in fact tender valuable consideration to Defendants in reasonable reliance on the passage contract(s) mentioned herein, and otherwise performed all of the terms of the passage contract(s), except those that Defendants prevented the Plaintiffs from performing.

36. On or about November 27, 2022, Defendants breached the above passage contract(s) by, among other things, negligently, intentionally and inexcusably creating dangerous conditions on the Cruise Ship, including, but not limited to, the unsafe stairway and flooring at the "Sanctuary" on the Cruise Ship and by failing to provide the safe Cruise Ship that was promised by Defendants to Plaintiffs.

37. Plaintiffs suffered damages as described herein elsewhere in this complaint, all of which were foreseeable resulting from the breach of contract(s) to recommend, reserve, book and provide Plaintiffs with a cruise ship that was not so defectively/negligently designed and/or maintained so as to be, in fact, unsafe and cause the INCIDENT.

38. Defendants also breached their duty(ies) to Plaintiffs by creating dangerous conditions on the Cruise Ship, including, but not limited to, the unsafe stairway and flooring at the "Sanctuary" on the Cruise Ship and for failing to adequately warn Plaintiff ROBERT EARL DUSTIN of the danger and expressly or implicitly advising and holding out to Plaintiffs that the Cruise Ship was safe, when in fact it was not.

39. As a sole and proximate result of the breach of passage contract(s), Plaintiffs suffered damages as described in the preceding paragraphs above and according to proof.

### THIRD CAUSE OF ACTION

**(For Loss of Consortium by Plaintiff JULIE DUSTIN against all Defendants)**

40. Plaintiffs hereby incorporate by reference each and every allegation of this

8
**COMPLAINT**

complaint to the extent it is relevant to this cause of action.

41. As a further and direct result of the aforesaid negligence of Defendants, the Plaintiffs, who were then and are now husband and wife, were caused to sustain and suffer a loss of consortium to the detriment of their marital relationship, which is permanent in nature.

42. The sole and proximate cause of the injuries sustained by Plaintiffs, as aforesaid, was the negligence of the Defendants without any negligence on the part of Plaintiffs in any way contributing thereto.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as against each and every Defendant and all of them, jointly and severally, as follows:

1. General damages according to proof;
2. Special damages according to proof;
3. Loss of earnings/earnings capacity, according to proof;
4. Punitive and/or exemplary damages (where applicable)
5. Interest at the legal rate;
6. Costs for suit incurred herein; and
7. For such other further relief as this Court deems just and proper.

Dated: April 2, 2024                         SCHWIMER WEINSTEIN LLP

_____
Michael E. Schwimer, Esq.
Attorneys for Plaintiff
ROBERT EARL DUSTIN
AND JULIE DUSTIN

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues and causes of action.

Dated: April 2, 2024

SCHWIMER WEINSTEIN LLP

_____
Michael E. Schwimer, Esq.
Attorneys for Plaintiff
ROBERT EARL DUSTIN
AND JULIE DUSTIN